UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

XAVIER SMITH,

          Plaintiff,                Case No. 4:22-cv-10820
                                    District Judge F. Kay Behm
v.                                  Magistrate Judge Anthony P. Patti

JOHN PURDOM, *et al.*,

          Defendants.

_____/

## ORDER STRIKING ECF No. 68 and DENYING PLAINTIFF'S MOTION TO STRIKE (ECF No. 70) and REPORT AND RECOMMENDATION TO GRANT DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (ECF No. 65)

**I.   RECOMMENDATION**:  The Court should **GRANT** Defendants' motion for summary judgment (ECF No. 65).  Plaintiff's motion to strike (ECF No. 70) is **DENIED.**  Defendants' duplicative reply brief (ECF No. 68) is **STRICKEN**.

**II.   REPORT:**

### A.   Background

Plaintiff Xavier Eric Smith is currently located at the Michigan Department of Corrections' (MDOC's) Ionia Correctional Facility (ICF).  On April 12, 2022, while he was located at the MDOC's Gus Harrison Correctional Facility (ARF), Plaintiff initiated this case, *in pro per*, alleging First and Eighth amendment violations against John Purdom, Robert Tatro, Alyssa Steward, and John Doe.

(ECF No. 1, PageID.229-231.)  It was referred to me for all pretrial matters. (ECF Nos. 14, 26.)  After a significant amount of motion practice and amendments (*see* ECF No. 61), the operative pleading in this matter is Plaintiff's May 8, 2023, Third Amended Complaint.  (ECF No. 38.)  The Third Amended Complaint asserts constitutional claims against Sergeant John Purdom, Corrections Officer (CO) Robert Tatro, CO Alyssa Steward, CO Brandon Isrow, CO Marlon Thomas, Sergeant David Slater, and CO Michael Harvey[1] for alleged incidents that occurred at the Macomb Correctional Facility (MRF) in Lenox Township, Michigan.  (ECF No. 38, PageID.228-30.)

In Plaintiff's unverified Third Amended Complaint, he makes various allegations and factual assertions against the seven Defendants.  Although his pleading is difficult to discern, he appears to be complaining about three separate incidents.  First, a physical assault against him which begin with Sgt. Purdom "attacking" him and shouting racial slurs, Defendant Taro choking him while making degrading comments, Defendant Stewart deploying a taser, and a John Doe officer hitting him in the head and body multiple times. (ECF No. 38, PageID.231.) The alleged assault resulted in injuries requiring painkillers for his back pain. (ECF

---

[1] Plaintiff's operative pleading contains several misspellings and incomplete names.  In their motion, Defendants have set forth the full names and spellings of those parties served and present in this matter, so the Court will adopt them in this R&R.  (ECF No. 65, PageID.394.)

No. 38, PageID.235.)  Second, Plaintiff alleges that Defendants Isrow, Slayer, and

Harvey "retaliated and discarded my television."  (ECF No. 38, PageID.231.)  The

operative pleading does not detail the precipitating event which caused the

retaliation.  (*Id.*)  In his deposition, Plaintiff makes clear that he alleges two

incidents or retaliation regarding the discarding or damage to his televisions, first

on January 9, 2021 and then August 15, 2021.  (ECF No. 65-2, PageID.428, 440.)

Third, included in the factual section of the Third Amended Complaint is a

description of an alleged sexual assault on March 29, 2021.  (ECF No. 38,

PageID.233.)  Plaintiff contends he stole some cakes and hid them in his pants, and

then Defendant Thomas reached into his pants "bare-handed in search of said

cakes."  (*Id.*)  "[A]fter touching-grabbing Plaintiff['s] penis bare-handed,"

Defendant Thomas wrote Plaintiff a violation for threatening behavior.  (*Id.*)

Plaintiff also asserts that Defendant Thomas commented on the (perceived) small

size of Plaintiff's genitalia.  (*Id.*)

Defendants bring their summary judgment motion arguing that the record

facts do not create a triable issue and they are entitled to judgment as a matter of

law.[2]  Plaintiff has filed a motion to strike Defendants' motion for summary

judgment.  (ECF No. 70.)

---

[2] Defendants submitted two identical reply briefs, on the same day, in further
support of their summary judgment motion.  (ECF Nos. 68, 69.)  The first reply
was submitted on behalf of Defendant Purdom, and the second was submitted 20

### C.  Defendants' Motion for Summary Judgment

Under Federal Rule of Civil Procedure 56, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A fact is material if it might affect the outcome of the case under governing law.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).  The Court "views the evidence, all facts, and any inferences that may be drawn from the facts in the light most favorable to the nonmoving party."  *Pure Tech Sys., Inc. v. Mt. Hawley Ins. Co.*, 95 F. App'x 132, 135 (6th Cir. 2004) (internal citations omitted).

"The moving party has the initial burden of proving that no genuine issue of material fact exists . . . ."  *Stansberry v. Air Wis. Airlines Corp.*, 651 F.3d 482, 486 (6th Cir. 2011) (internal quotations omitted); cf. Fed. R. Civ. P. 56 (e)(2) (providing that if a party "fails to properly address another party's assertion of fact," then the court may "consider the fact undisputed for the purposes of the motion.").  "Once the moving party satisfies its burden, 'the burden shifts to the nonmoving party to set forth specific facts showing a triable issue.'"  *Wrench LLC v. Taco Bell Corp.*, 256 F.3d 446, 453 (6th Cir. 2001) (quoting *Matsushita Elec. Indus. Co. v. Zenith*

---

minutes later on behalf of all Defendants, including Purdom.  The logical explanation for this is that defense counsel inadvertently neglected to check all Defendants when submitting the first reply and submitted it again to correct the error.  As the two replies are identical, the duplication has no effect on the Court's analysis and ECF No. 68 is **STRICKEN**.

*Radio Corp.*, 475 U.S. 574, 587 (1986)).  The nonmoving party must "make an affirmative showing with proper evidence in order to defeat the motion." *Alexander v. CareSource*, 576 F.3d 551, 558 (6th Cir. 2009); *see also Metro. Gov't of Nashville & Davidson Cnty.*, 432 F. App'x 435, 441 (6th Cir. 2011) ("The nonmovant must, however, do more than simply show that there is some metaphysical doubt as to the material facts . . . .   [T]here must be evidence upon which a reasonable jury could return a verdict in favor of the non-moving party to create a genuine dispute.") (internal quotation marks and citations omitted). Moreover, "the mere existence of a scintilla of evidence that supports the nonmoving party's claims is insufficient to defeat summary judgment." *Pack v. Damon Corp.*, 434 F.3d 810, 814 (6th Cir. 2006) (internal quotations and citations omitted).

Summary judgment is appropriate if the evidence favoring the nonmoving party is merely colorable or is not significantly probative. *City Management Corp. v. United States Chem. Co.*, 43 F.3d 244, 254 (6th Cir. 1994).  In other words, summary judgment is appropriate when "a motion for summary judgment is properly made and supported and the nonmoving party fails to respond with a showing sufficient to establish an essential element of its case. . . ." *Stansberry*, 651 F.3d at 486 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)).

The fact that Plaintiff is *pro se* does not lessen his obligations under Rule 56. Rather, "liberal treatment of pro se pleadings does not require lenient treatment of substantive law." *Durante v. Fairlane Town Ctr.*, 201 F. App'x 338, 344 (6th Cir. 2006). In addition, "[o]nce a case has progressed to the summary judgment stage, . . . 'the liberal pleading standards under *Swierkiewicz* [*v. Sorema N.A.*, 534 U.S. 506, 512-13 (2002)] and [the Federal Rules] are inapplicable.'" *Tucker v. Union of Needletrades, Indus. & Textile Employees*, 407 F.3d 784, 788 (6th Cir. 2005) (quoting *Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1315 (11th Cir. 2004)). The Sixth Circuit has made clear that, when opposing summary judgment, a party cannot rely on allegations or denials in unsworn filings and that a party's "status as a pro se litigant does not alter [this] duty on a summary judgment motion." *Viergutz v. Lucent Techs., Inc.*, 375 F. App'x 482, 485 (6th Cir. 2010); *see also United States v. Brown*, 7 F. App'x 353, 354 (6th Cir. 2001) (affirming grant of summary judgment against a pro se plaintiff because he "failed to present any evidence to defeat the government's motion").

### D. Undisputed Facts

In the Court's initial scheduling order, I set forth my practice guidelines on summary judgment motions. Specifically, any movant for summary judgment must begin their motion "with a 'Statement of Material Facts' consisting of separately numbered paragraphs briefly describing the material facts underlying

the motion, sufficient to support judgment." (ECF No. 22, PageID.100.)  The

"[p]roffered facts must be supported with citations to the pleadings, interrogatories,

admissions, depositions, affidavits, or documentary exhibits." (*Id.*)  Defendants'

brief followed these requirements and set forth a four-page "Statement of Material

Facts," along with the required factual support and citation for each proffered fact.

(ECF No. 65, PageID.394-97.)

My scheduling order also required the party opposing summary judgment to

adhere to certain standard protocols: "The response to a Rule 56 Motion must

begin with a 'Counter-statement of Material Facts' stating which facts are admitted

and which are contested." (ECF No. 22, PageID.101.)  Further, "[i]f any of the

moving party's proffered facts are contested, the non-moving party must explain

the basis for the factual disagreement, referencing and citing record evidence."

(*Id.*)  The scheduling order clearly set forth that, "Any proffered fact in the

movant's Statement of Material Facts that is not specifically contested will, for the

purpose of the motion, be deemed admitted." (*Id.*)  Plaintiff, however, wholly

ignored these requirements in his response brief and did not respond to

Defendants' statement of facts at all.   Instead, in his response brief he sets forth a

purported "Statement of Facts," which does not reply to Defendants' facts in any

way, and are largely either without citation, or simply a citation with no indication

of the relevance of the citation.  (ECF No.  67, PageI.509-15.)  Thus, as set forth in

my scheduling order, all of Defendants' proffered facts are deemed admitted and set forth below, verbatim, omitting Fact Numbers 1-7 as containing background information already recounted earlier in this report, and starting with Fact Number 8.[3]

8. On January 9, 2021 [while at MRF], Smith was transferred to segregation because of fighting, and CO Isrow conducted Smith's property pack-up for his transfer. (ECF No. 38, PageID.232; Def. Ex. A, Smith Dep. Tr., at 9:20-21.)

9. CO Isrow told Smith that he was confiscating Smith's TV as contraband because Smith did not have a receipt for it. (Def. Ex. A, at 9:20-25.)

10. Three days later, on January 12, 2021, Smith filed a grievance against CO Isrow for confiscating his TV. (*Id.*, at 10:12-11:10.)

11. On January 19, 2021, staff was going cell to cell in Smith's unit dropping off meals for chow.[4]  (*Id.*, at 11:18-12:3, 12:22-13:9.)

12. When Smith's cell door was opened to pass him a tray, Smith stepped out of his cell without authorization. (Def. Ex. A, at 11:18-12:3, 12:22-13:9; Def. Ex. B Houck-Born Decl., Att. 1, Misconduct Hearing Report, at pp. 2-3.)

---

[3] Although these facts are taken as undisputed, the Court will also address Plaintiff's allegations and Plaintiff's deposition testimony in more detail in the Analysis section.

[4] Chow is misspelled as Childs in Plaintiff's deposition transcript.

13. Three staff members, including CO Stewart[,] who was responding to a call over the radio, approached Smith. (Def. Ex. A, at 13:24-14:4; Def. Ex. C, Stewart First Interrogatories, # 2.)

14. Smith refused multiple commands to reenter his cell. (Def. Ex. B, Att. 1, at pp. 2-3; Def. Ex. C, #'s 6, 17.)

15. CO Stewart did not fire a taser at Smith. (Def. Ex. A, at 13:18-23.)

16. Sgt. Purdom then arrived and gave Smith a direct order to return to his cell. (Def. Ex. A, at 6:16-7:6, 8:14-9:5; Def. Ex. B, Att. 1, at pp. 2-3; Def. Ex. D, Purdom Interrogatories, # 12; Def. Ex. E, Tatro Interrogatories # 5.)

17. Smith disobeyed the direct order from Sgt. Purdom. (Def. Ex. A, at 18:14-21.)

18. Smith had his hands both up and down during this encounter. (Def. Ex. B, Att. 1, at pp. 2-3.)

19. Sgt. Purdom then tried to guide Smith into his cell, [in response] to which Smith pulled away and then further resisted staff efforts to handcuff him. (Def. Ex. B, Att. 1, at pp. 2-3; Def. Ex. D, # 12; Def. Ex. E, # 5.)

20. After Smith refused orders and began physically resisting, "[s]everal officers were required to secure [Smith] in restraints" and control Smith's body, including CO Tatro, who controlled Smith's head as Smith actively resisted. (Def. Ex. B, Att. 1, at pp. 2-3; Def Ex. D, # 13; Def Ex. C, #'s 7, 8; Def Ex. E, #'s 7, 8.)

21. Sgt. Purdom never fired his taser at Smith, he only unholstered it and pointed it at Smith. (Def Ex. D, #'s 2, 3, 4, 9; Def Ex. C, # 13; Def Ex. E, # 11; Def. Ex. B, Att. 1.)

22. Smith was not choked from behind by CO Tatro or anyone. (Def Ex. D, # 15; Def Ex. C, # 9; Def Ex. E, # 9).

23. CO Stewart helped to handcuff Plaintiff after he resisted staff. (Def Ex. C, # 3.)

24. CO Stewart never handcuffed, then unhandcuffed Smith prior to Smith resisting staff. (*See* Def Ex. C, #'s 3, 4, 5; Def Ex. F, Stewart Second Interrogatories, #'s 1, 2)

25. On March 29, 2021, Smith stole some cakes and bread when staff were passing out meals in Smith's unit. (Def. Ex. A, at 25:3-11.)

26. Smith put the stolen items in his "drawer[s]" (underwear), and a corrections officer with the last name of Thompson ran in[to] Smith's cell after him and retrieved the stolen items back from Smith. (Def. Ex. A, at 25:12-26:7; ECF No. 38, PageID.233, 244-245.)

27. CO Thomas was not involved in any incident on March 29, 2021, with Smith and did not go into Smith's cell after Smith stole food on March 29, 2021. (Def Ex. G, Thomas Interrogatories.)

28. On August 15, 2021, Smith was transferred to segregation for fighting. (Def. Ex. A, at 21:1-6, 22:1-6.)

29. Smith *thinks* that Sgt. Slater damaged the screen on his TV while he was in segregation. (*Id*., at pp. 21-24 [emphasis in original].)

30. Smith has no actual evidence that Sgt. Slater damaged his TV. (*Id*.)

31. CO Harvey did not damage Smith's TV. (*Id*., at 22:7-9, 23:2-4.) (ECF No. 65, PageID.394-97.)

### E. Analysis

#### 1. Eighth Amendment Excessive Force

An inmate's post-conviction excessive force claim must be raised "exclusively under the Eighth Amendment's cruel and unusual punishment clause." *Pelfrey v. Chambers*, 43 F.3d 1034, 1036–37 (6th Cir. 1995**).**  The Eighth Amendment proscribes the unnecessary and wanton infliction of pain against prisoners.  *Whitley v. Albers*, 475 U.S. 312, 319 (1986).  To establish an Eighth Amendment claim, Plaintiff must satisfy both an objective and a subjective component.  *See Moore v. Holbrook*, 2 F.3d 697, 700 (6th Cir. 1993).

The subjective component focuses on the state of mind of the prison officials.  *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011).  The Court considers "whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm."

*Hudson v. McMillian*, 503 U.S. 1, 6 (1992) (internal citation omitted).  In

determining whether the use of force was wanton and unnecessary, the Court

considers such factors as "the need for application of force, the relationship

between that need and the amount of force used, the threat 'reasonably perceived

by the responsible officials,' and 'any efforts made to temper the severity of a

forceful response.'" *Combs v. Wilkinson*, 315 F.3d 548, 556-57 (6ᵗʰ Cir. 2002)

(quoting *Hudson*, 503 U.S. at 7).

The objective component requires the pain inflicted to be "sufficiently

serious." *Wilson v. Seiter*, 501 U.S. 294, 298 (1991). The seriousness of the

injuries are not dispositive.  *Williams*, 631 F.3d at 383.  Rather, the Court employs

a "contextual" inquiry that is "responsive to contemporary standards of decency."

*Hudson*, 503 U.S. at 8–9 (internal citation and quotation marks omitted).

"The maintenance of prison security and discipline may require that inmates

be subjected to physical contact actionable as assault under common law; however,

'a violation of the Eighth Amendment will nevertheless occur if the offending

conduct reflects an unnecessary and wanton infliction of pain.'"  *Combs*, 315 F.3d

at 556 (quoting *Pelfrey v. Chambers*, 43 F.3d 1034, 1037 (6ᵗʰ Cir. 1995) (internal

quotation marks and alterations omitted)).

### a.   January 19, 2021 incident

Plaintiff complains that Defendants violated his Eighth Amendment rights on January 19, 2021.  (*See*, e.g., ECF No. 38, PageID.248.)  According to his deposition testimony, Plaintiff states that first an unnamed Correction Officer came by with his "chow," and Plaintiff told him that he was "feeling homicidal, suicidal" and that he needed "to go to bam-bam."  (ECF No. 65-2, PageID.430.)  Plaintiff was told to step out of his cell and then Defendant Stewart came in.  (*Id.*)  Plaintiff testified that when Stewart came into his cell, she instantly pointed the taser at him and he put his hands up.[5]  (ECF No. 65-2, PageID.430.)  He stated that was not trying to fight anyone or get into a "scuffle."  (*Id.*)  Plaintiff then asked to be put in handcuffs.  Stewart put him in handcuffs temporarily, but when she took him out of handcuffs, he asked to be put back into them because he did not want to "get jumped on by the COs."  (*Id.*)  Plaintiff's claim against Stewart is that she took him *out of handcuffs* and thereby allowed an assault to occur on him.  He testified that when she took him out of handcuffs, Stewart stated "today you're going to get your a** whooped."  (*Id.* at PageID.434.)

Thereafter Purdom came in the room. Plaintiff testified that he and Defendant Purdom did not "like each other," because Plaintiff "was being a prisoner . . . and doing things [he] wasn't supposed to be doing and getting away

---

[5] When asked if Stewart fired the taser at Plaintiff, he said, "She just pulled it out and pointed it at me as if she was defending herself so nothing would happen." (ECF No. 65-2, PageID.431.)

with it, and it always fall back on [Purdom]."  (ECF No. 65-2, PageID.425.)

Plaintiff claims that Defendant Purdom was always calling him "boy," as a racial

slur (*id.* at PageID.424-25).  Plaintiff also explains: "Let's just say I wasn't being a

model prisoner. I was getting into things, fighting, stealing, taking things from

other inmates . . . And it would always fall back on Purdom."  (*Id.* at PageID.425.)

> Plaintiff claims that on January 19, 2021:

> I was hearing voices.  I told Stewart I was having homicidal suicidal
> thoughts.  Stewart put me in handcuffs.  I was handcuffed before [Purdom]
> came down there.  Then she took me out of handcuffs, that's when [Purdom]
> came rushing downstairs and tased me.  That's when he said, boy, go in your
> cell, boy, go in your cell.

(ECF No. 65-2, PageID. 426-27.)  According to Plaintiff, after being told to go

back into his cell, Purdom tased him.  Plaintiff testified that, "The whole time I got

my hands in the air.  I'm not trying to resist.  I'm not trying to cause a problem or

anything."  (ECF No. 65-2, PageID.426.)  According to Plaintiff, Purdom used the

taser so long that the circuit board broke, and he was charged for a new taser.  (*Id.*

at PageID.433.)

As to Defendant Tatro, Plaintiff testified that when Tatro[6] came downstairs,

he slammed Plaintiff on his head, while Plaintiff's hands were up and while he was

---

[6] In the deposition transcript, Defendant Tatro is listed as "Patro," but there does
not appear to be any material dispute that Defendant's name is actually Robert
Tatro.

not refusing anything. (ECF No. 65-2, PageID.435.)  Plaintiff claims that Tatro

pushed on his head "like he was doing CPR" on Plaintiff's head, and putting his

knee on Plaintiff's head.[7] (*Id.*)  Plaintiff claims that Tatro then put him in

restraints, and Defendants twisted his ankle while putting him in restraints.  (*Id.*)

After he was strapped to the "straight-chair," Plaintiff contends that Tatro came

from behind and choked him again.  (*Id.*at PageID.436.)  Plaintiff first testified that

he never refused any orders or resisted in any way.  (*Id.*)  When asked again,

however, Plaintiff admitted that when Purdom told him to go into his cell, he

refused.  (*Id.* at PageID.436.)  He testified that because of his homicidal and

suicidal thoughts, he wanted to go to "bam-bam."  (*Id.* at PageID.437-38.)

Plaintiff testified that a video would confirm his version of events.  (*Id.* at

PageID.432.)  No video has been submitted by either party, although a video was

reviewed at his administrative hearing.

Plaintiff was cited for the incidents of January 19, 2021 and the hearing

occurred on January 26, 2021.  Defendants attach to their motion the affidavit of

Jennifer Houck-Born, a Litigation Specialist with the Office of Legal Affairs at the

MDOC, which contains exhibits that she certifies are kept in the ordinary course of

---

[7] Defendant Tatro's Interrogatory Responses state, "I did not shove Plaintiff's head
into the ground, I attempted to control Plaintiff's head while other staff were trying
to gain control over other body parts as Plaintiff was physically resisting our
attempts to restrain him.  (ECF No. 65-6, PageID.493.)

business of the MDOC.  (ECF No. 65-3, PageID.448.)  According to those records,

Plaintiff was charged and found guilty of "Incite to Riot or Strike" and "Assault

and Battery[,]" both of which are Class I major misconduct violations.  (*Id.*)

Plaintiff was given a formal hearing on the charges, which was presided over by

Administrative Law Judge (ALJ) Cheryl Pezon, of the Michigan Department of

Licensing and Regulatory Affairs.  (*Id.;* ECF No. 54, PageID.407)  ALJ/Hearing

Officer issued a Hearing Report which includes her factual findings and which

states:

> The misconduct report indicates that Prisoner was refusing to go back into
> his cell.  The Sergeant activated his ECD [taser] toward Prisoner and gave
> him an order to step into his cell.  As the Sergeant attempted to guide
> Prisoner into his cell, Prisoner pulled away and continued to resist all staff's
> efforts to handcuff him.  Prisoner began screaming to the other prisoner on
> the wing, "y'all need to tear this b*tch up" to which several prisoners began
> screaming back and kicking their cell doors.  Afterwards a broken ECD
> trigger was found on the A-wing floor and the trigger was broken off.
>
> Prisoner enters a plea of not guilty.  Prisoner states that his hands were up
> the whole time.  Prisoner admits that there "probably was" other prisoners
> yelling in the unit.  Prisoner states that the Sergeant did not give him a direct
> order and "he didn't tell me sh*t."  Prisoner states, "I tried to avoid the
> whole thing."  Prisoner indicates that he had been asking to talk to a sergeant
> all week.  Prisoner states that he needed his legal property for a court hearing
> on January 20th.
>
> Video evidence of the incident was reviewed before the hearing outside of
> Prisoner's presence.  Video evidence supports the description of the
> violation provided in the misconduct report.   Details of the video are
> discussed further in the Findings section below.  Prisoner was advised that
> the video shows him with his arms up and down.

(ECF No. 65-3, PageID.452.)  The Hearing Officer found Plaintiff guilty of Assault and Battery, stating that the video supported the claim that "Prisoner resisted the Sergeant's attempt to place Prisoner in restraints." (ECF No. 65-3, PageID.453.)  The Hearing Officer found that, in the video, Plaintiff is seen standing in the cell doorway talking to an officer and that he did not have his arms up the whole time.  (*Id.*)  First they were up, then they went back down.  (*Id.*)  The Hearing Officer further details the video showing that, when the Sergeant arrived and pulled out his taser, Plaintiff "turn[ed] around and then start[ed] to struggle with staff.  Several officers were required to secure [Plaintiff] in restraints."  (*Id.*)  The Hearing Officer found "that Prisoner physically resisted the Sergeant and staff by refusing to place him in handcuffs."  (*Id.*)  Prisoner was found guilty of Assault and Battery and Incite to Riot or strike; Rioting or Striking.[8]  (*Id.*)

Following the incident, Plaintiff was seen on the same day at the institution's clinic by Nurse Diana Hering.  Her clinical notes indicate, "Inmate assessed in healthcare at request of custody after inmate involved in takedown by officers." (ECF No. 65-3, PageID.455.)  According to Nurse Hering's notes, Plaintiff complained of a headache and hurt ankle.  (*Id.* at PageID.455-56.)  She noted no visible sign of injury to the ankle, no discoloration or swelling, and that Plaintiff

---

[8] A charge of Disobeying a Direct Order was dismissed as duplicative.  (ECF No. 65-3, PageID.452.)

was able to bear weight and had a steady gait.  (*Id.* at PageID.455-56.)  She also

noted a small lump on his forehead.  (*Id.* at PageID.456.)  He was prescribed

Tylenol and told to report back if he experienced further pain.  (*Id.*)  The nurse

noted that Plaintiff was "agreeable," and "appears calm," and "cooperative."  (*Id.*

at PageID.455.)

In their motion for summary judgment, Defendants argue that the hearing

conclusions foreclose Plaintiff's claim under the Eighth Amendment.  In *Peterson*

*v. Johnson*, 714 F.3d 905 (6th Cir. 2013), the Sixth Circuit held that a hearing

officer's factual determination at a Michigan major misconduct hearing *may* have

preclusive effect in litigation brought by a prisoner under § 1983. *Id*. at 901-13.

However, "*Peterson* is not a blanket blessing on every factual finding in a major-

misconduct hearing," nor does it mean that "any factual findings by a hearing

officer in a major-misconduct hearing in a Michigan prison are to be accorded

preclusive effect."  *Roberson v. Torres*, 770 F.3d 398, 404 (6th Cir. 2014).  Instead,

the Sixth Circuit has clarified:

> To determine whether we must give preclusive effect to "factfinding from
> Michigan prison hearings," we look to four requirements, all of which must
> be met: (1) the state agency "act[ed] in a 'judicial capacity' "; (2) the hearing
> officer "resolved a disputed issue of fact that was properly before it"; (3) the
> prisoner "had an adequate opportunity to litigate the factual dispute"; and,
> (4) if these other three requirements are met, we must "give the agency's
> finding of fact the same preclusive effect it would be given in state courts."

*Maben v. Thelen*, 887 F.3d 252, 259 (6th Cir. 2018) (quoting *Peterson*, 714 F.3d at 911–13 (internal citation and quotation marks omitted).

Defendants have persuasively shown that all four factors are present in this case:  (1) the Hearing Officer acted in a judicial capacity when she considered the evidence and made her determination; (2) the Hearing Officer resolved the factual dispute of whether Plaintiff resisted the order to return to his cell and resisted being handcuffed; (3) Plaintiff was at the hearing where he was provided an opportunity to argue his version of the event; and, (4) because the other three factors are present, Michigan would give the findings preclusive effect and thus so should the Court.  714 F.3d at 911.  Accordingly, the facts found by the Hearing Officer are given preclusive effect.  Specifically:  Plaintiff did not have his hands up the whole time, he did not obey the order to go back in his cell, he struggled with staff, he resisted and refused being placed in handcuffs, several officers were required to secure him in restraints, he shouted at other prisoners to encourage them to scream back and kick their cell doors.  (ECF No. 65-3, PageID.452-53.)

With these facts given preclusive effect, the Court must now determine whether Plaintiff has identified a jury question on whether Defendants conduct violated the Eighth Amendment.  The Court should conclude he has not. There can be no dispute that Plaintiff refused to obey a reasonable, direct order to return to his cell, and that Plaintiff did not keep his hands up.  Instead, Plaintiff

refused to be restrained, resisted the attempt to be placed in handcuffs, and attempted to incite a riot within the prison.  Under these facts, Plaintiff cannot, as a matter of law, meet either the objective or subjective test for establishing an Eighth Amendment violation against any Defendant.

As to the subjective component, Plaintiff cannot show that any Defendant had the requisite state of mind, as the facts conclusively show that the "force was applied in a good faith effort to maintain or restore discipline" rather than "maliciously and sadistically for the very purpose of causing harm."  *Hudson*, 503 U.S. at 6.

The parties agree that there were three defendants involved in the January 19, 2021 incident: Stewart, Purdom, and Tatro.  As a preliminary matter, in light of the Hearing Officer's findings, there can be no jury question that the use of force was justified in light of Plaintiff's failure to obey a direct order to return to his cell and his resistance to being restrained under these circumstances.  Indeed, even Plaintiff testified at his deposition that when Purdom told him to go into his cell, he refused to into his cell.  (*Id.* at PageID.436.)  Nor can there be any serious debate, in light of the clinical notes following the incident, that Plaintiff's injuries were minimal: a sore ankle and a sole, small lump on his head requiring Tylenol.[9]  Both

---

[9] Plaintiff asserts that he also suffered back pain, and submits three kite responses folded within is summary judgment response.  (ECF No. 67, PageID.560-564.) These records, *dated 19 months after the incident*, stated that on August 26, 2022

of these undisputed facts are set forth in Defendants' Statement of Facts and supported by the record.  Given the conclusive evidence of Plaintiff's misbehavior and the minor extent of the injuries inflicted in responding to that behavior, a jury could *only* find that these factors weigh against finding a violation of the Eighth Amendment.  *See Combs*, 315 F.3d at 556-57  (quoting *Hudson*, 503 U.S. at 7) (To determine whether the use of force was wanton and unnecessary, the Court considers such factors as "the need for application of force, the relationship between that need and the amount of force used, the threat 'reasonably perceived by the responsible officials,' and 'any efforts made to temper the severity of a forceful response.'")

### i.    Defendant Stewart

Applying the remaining factors to each of the individual defendants, there is no dispute that Stewart employed no force whatsoever against Plaintiff.  Plaintiff's fundamental claim against Stewart is that she took him out of handcuffs and thereby allowed an assault to occur on him.  (ECF No. 65-2, PageID.434.)  This unusual allegation, however, not only fails to set forth an unnecessary, disproportional, or unreasonable amount of force, *see generally Combs*, 315 F.3d

---

his back "gave out" and he requested pain medication.  They do not tie the back pain in any way to the January 19, 2021 incident and, even if they attempted to, would be insufficient to create a jury question on causation or to refute the evidence of only minor injury submitted by Defendants.

at 556, but it is doubly unpersuasive as it conflicts with the Hearing Officer's

conclusion that Plaintiff *resisted* the use of handcuffs, and triply unpersuasive as it

conflicts with Defendants' undisputed Statement of Facts that Stewart never took

him out of handcuffs prior to him resisting restraint.  (See Statement of Fact No.

24, *supra*).  Accordingly, Plaintiff cannot meet the subjective component of his

claim, and the claim against Stewart fails as a matter of law.

### ii.    Defendant Purdom

Other than Purdom's very general and justified participation in restraining

him, Plaintiff's primary argument against Purdom is that he used his taser so long

that the circuit board broke and he was charged for a new taser.  (*Id.* at

PageID.433.)   However, Defendant Purdom averred in his interrogatory responses

that he never tased Plaintiff, (ECF No. 65-5, PageID.487), and Defendants Stewart

and Tatro also averred in their responses that Plaintiff was never tased by anyone

(ECF No. 65-4, PageID.482; ECF No. 65-6, PageID.494).  These facts were

included in Defendants' undisputed Statement of Facts, which Plaintiff has failed

to rebut.  Moreover, the Hearing Officer report indicates that a taser was found at

the site of the incident with the trigger broken off, (ECF No. 65-3, PageID.452) –

which may well indicate a malfunction when officers attempted to use a taser or

damage done to it in the scuffle – but states nothing about a broken "circuit board."

In sum, the record evidence, along with the Hearing Officer's report and the

22

undisputed Statement of Facts, cannot create a triable issue to rebut Defendant's

showing that Plaintiff was not tased, and Plaintiff's claim against Purdom must

fail.

### iii.    Defendant Tatro

Plaintiff testified that when Defendant Tatro came downstairs, he slammed

Plaintiff on his head, while Plaintiff's hands were up and while he was not refusing

anything. (ECF No. 65-2, PageID.435.)  This deposition testimony, however,

cannot rebut the Hearing Officer's factual finding that Plaintiff was actively

resisting the handcuffs and "several officers were required to secure [Plaintiff] in

restraints."  (ECF No. 65-3, PageID.453.)  As to the remaining allegations against

Tatro, relating to his use of force while restraining Plaintiff, these too fail as a

matter of law. "[O]fficials confronted with a prison disturbance must balance the

threat unrest poses to inmates, prison workers, administrators, and visitors against

the harm inmates may suffer if guards use force." *Hudson*, 503 U.S. at 7.

"Because prison officials 'must make their decisions in haste, under pressure, and

frequently without the luxury of a second chance,' [courts] must grant them 'wide-

ranging deference in the adoption and execution of policies and practices that in

their judgment are needed to preserve internal order and discipline and to maintain

institutional security.'" *Combs*, 315 F.3d at 557.  Both the Hearing Officer's

factual findings, and the record evidence—collectively and individually—

conclusively show that Plaintiff cannot meet the subjective component of the Eighth Amendment test as to any defendant.

Similarly, the Hearing Officer's factual findings and the clinical notes following the incident show as a matter of law that Plaintiff cannot meet the objective element of the test.  The Court employs a "contextual" inquiry that is "responsive to contemporary standards of decency." *Hudson*, 503 U.S. at 8–9 (internal citation and quotation marks omitted).  Here, the context, as described in the ALJ's findings, was a highly disruptive scenario in which Plaintiff screamed at the other prisoners to "'tear this bitch up[,]' … encouraging other prisoners to take action to destroy or damage the facility[,]" in response to which "other prisoners began screaming … and began kicking their cell doors." (ECF No. 65-3, PageID.453.)  Given the relatively minor injuries experienced following major misconducts (Assault and Battery, Incite to Riot), the amount of force used was objectively reasonable and responsive to contemporary standards of decency as a matter of law.

These conclusions are further amplified by the Statement of Facts Defendants proffered, with abundant factual citations establishing that they are entitled to summary judgment as a matter of law on Plaintiff's Eighth Amendment claim.  After Defendants met their initial burden under Rule 56, the burden shifted to Plaintiff to set forth specific facts showing a triable issue.  *Matsushita Elec.*

*Indus. Co.*, 475 U.S. at 587.  Plaintiff must "make an affirmative showing with proper evidence in order to defeat the motion."  *Alexander*, 576 F.3d at 558. Plaintiff failed to do so, instead relying on, apparently, his unverified operative pleading; the assertions made in his rambling and often incoherent response brief; "exhibits" randomly incorporated within his response brief, with underlines and hand-written notes in the margins; inadmissible, unnotarized "declarations" by other inmates which were not signed under penalty of perjury, and a lengthy "declaration" by Plaintiff which (albeit notarized) adds little to the factual record other than attempting to dispute the factual findings from the Hearing Officer, which are given preclusive effect.[10]

For these reasons, the Court should **GRANT** summary judgment to Defendants Stewart, Tatro, and Purdom on Plaintiff's Eighth Amendment claim.

### b.  March 29, 2021 incident

The Court should also grant summary judgment to Defendant Thomas on Plaintiff's claim against him for the March 29, 2021 incident.  Briefly, Plaintiff

---

[10] "An affidavit or declaration submitted to support or oppose summary judgment must be a sworn document or declared to be true under penalty of perjury. Courts will not ordinarily consider statements that do not meet one of these two standards." *Moore's Federal Practice, §56.94[2][a]. See, e.g., Nissho-Iwai Am. Corp. v. Kline*, 845 F.2d 1300, 1305-1306 (5th Cir. 1988) (affidavit that was "neither sworn nor its contents stated to be true and correct nor stated under penalty of perjury" could not be considered as summary judgment proof). *See also, Demars v. O'Flynn*, 287 F. Supp.2d 230, 242-243 (W.D.N.Y. 2003).

admitted under oath that he "stole some cakes" and pieces of bread by "grab[bing]

a whole bunch of cakes and bread" from a food tray . (ECF No. 65-2,

PageID.443).  Plaintiff testified that the officer who saw this "got mad" and ran

into Plaintiff's cell, whereupon Plaintiff promptly shoved the cakes and bread into

his underwear.  (*Id.*)  The officer then "went into [his underwear] and grabbed [his]

penis" and said Plaintiff had small genitalia  (*Id.*)   In light of Plaintiff's own

testimony that he shoved the food into his underwear, he should hardly be

surprised that a prison guard would have to go into his underwear to retrieve it, and

does not make out a case for "cruel and unusual punishment" simply because

someone made an insensitive comment about the size of his male anatomy.

Even if these facts could, theoretically, support an Eighth Amendment claim,

Defendant Thomas is nonetheless entitled to summary judgment.  Defendant

Thomas averred in interrogatory responses that he does not recall Plaintiff stealing

cakes or bread on March 29, 2021, that he did not go into Plaintiff's cell on that

date, that he did not remove cakes and bread from Plaintiff, that he did not grab

Plaintiff's penis, and that he did not issue Plaintiff a misconduct report about the

alleged incident.  (ECF No. 65-8.)  These facts were submitted by Defendants in

their Statement of Facts, and undisputed by Plaintiff.  Defendants further point out

that, although Plaintiff brought his complaint against "Defendant *Thomas*," the

incident report and hearing report attached to his operative pleading list an officer

"*Thompson*."  (ECF No 38, PageID.244, 245.)  The two names being quite

common, the Court should not assume that Plaintiff simply misspelled the name.

In fact, Plaintiff's original complaint did not list any Defendant Thomas or

Thompson or include any allegations related to the alleged March 29, 2021

incident.  (ECF No. 1.)  Neither did his first amended complaint (ECF No. 11), nor

his subsequently denied motion to amend (ECF No. 19).  Not until his motion for

leave to file a second amended complaint did he mention the March 29, 2021

incident and in *that* pleading, all references to the officer involved listed him as

"Thomas."  (ECF No. 27-1, PageID.125-126, 133.)  It is noteworthy that Plaintiff

did not include any attachments to this pleading, and there was no way of knowing

that Plaintiff had apparently listed the wrong defendant.  The Court granted the

motion for leave, and the United States Marshal Service executed service on a

corrections officer "Thomas" at the relevant facility.  (ECF No. 36.)  Thereafter,

counsel filed a notice of appearance on behalf of Defendants, including on behalf

of Marlon Thomas, the officer served according to the spelling in the then-

operative pleading.  (ECF No. 39.)  Following the service and filing of the notice

of appearance, Plaintiff again sought to amend his pleadings several times, each

time listing Defendant "Thomas," though now attaching the incident and hearing

report indicating an officer "Thompson."  Though he persisted in a relentless

pursuit to continuously amend his pleadings (*see* ECF No. 61 for procedural

history of amendments), at no time did he change the spelling of the served

Defendant, nor did he seek leave to substitute the correct officer.  Indeed, in one of

his proposed amended pleadings he lists the relevant Defendant as "Marlon

Thomas."  (*See* ECF No. 54.)  Further, in Plaintiff's deposition testimony, defense

counsel questioned Plaintiff about Defendant *Thomas's* involvement, and Plaintiff

never clarified or distinguished. (ECF No. 65-2, PageID.442-443.)

 While the Court understands that pro se prisoners do not always have access

to the correct name or spelling of the intended defendants, in this case every

indication at the time of service is that Plaintiff listed Defendant "Thomas" as the

relevant officer.  A Marlon Thomas was then served, and counsel appeared on his

behalf.  Despite having possession of the incident reports, and attaching them

several times, and despite Defendant Thomas denying any involvement in the

March 19, 2021 incident, at no time has Plaintiff attempted to correct the spelling

or substitute the correct Defendant.  It is axiomatic that Plaintiff is "master of his

complaint," and in this case he simply sued the wrong person.

 There is no genuine issue of fact that Defendant Marlon *Thomas*, who is the

only served and represented Defendant, was not involved in any way in the March

29, 2021 incident.  The Court should **GRANT** summary judgment to him.[11]

---

[11] Even had Plaintiff served the correct Defendant, for the reasons stated above his
claim would nonetheless fail to survive summary judgment on the merits.  A
reasonable jury could not conclude it constitutes "cruel and unusual punishment,"

### 2. First Amendment Retaliation

The Supreme Court has recognized that prison inmates retain those First Amendment rights not incompatible with their status as prisoners. *Pell v. Procunier*, 417 U.S. 817, 832 (1974); *see also Jones v. Caruso*, 569 F.3d 258, 267 (6th Cir. 2009). Retaliation based on a prisoner's exercise of constitutional rights violates the Constitution. *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999). To plead a First Amendment retaliation claim, Plaintiff must allege that: (1) the plaintiff engaged in activities protected by the Constitution or statute; (2) the defendant took an adverse action that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) the adverse action was taken at least in part because of the exercise of the protected conduct. *Id.*

Plaintiff asserts two alleged instances of retaliation: one on January 9, 2021, when his TV was discarded, and one on August 15, 2021, when his TV was intentionally broken. (ECF No. 65-2, PageID.428, 440.) Both claims fail as a matter of law.

Plaintiff testified that on January 9, 2021, he went to segregation and Defendant Izro packed up his property. (ECF No. 65-2, PageID.428.) According to Plaintiff, Izro said that Plaintiff did not have a receipt for his TV so Izro took it

_____

for an officer to retrieve admittedly stolen food from Plaintiff's underwear.[12] The testimony was as follows:

when Plaintiff went to segregation.  (*Id.*)  When asked why Defendant Izro took

the TV, Plaintiff testified, "I would just say it's retaliation.  Because all this with

Izro and Slater, Sergeant Slater, are retaliation due to the fact of the grievance I

filed on Izro.  I filed a grievance on Izro on January 12, 2021.  I filed a grievance

on it. . . .  And in this grievance he stated he didn't want me to get my TV, it's

contraband."  (ECF No. 65-2, PageID.428.)   According to Plaintiff, Izro is the

reason why all the subsequent events "came about, because if he would have

packed my TV and gave me back my TV and logged [it] . . . it wouldn't be no

grievance.  I wouldn't have no problem.  I would be fighting for no reason."  (ECF

No. 65-2, PageID.428-29.)   Plaintiff testified that he did not know why Izro took

his property, but that all of his property was taken when he went to segregation on

January 9, 2021.  (*Id.* at PageID.429.)

Plaintiff has failed to identify facts to show he engaged in any protected

action precipitating the retaliation.  He alleges that his television was confiscated

on January 9, 2021, which he asserts, at best, was in retaliation for a grievance he

filed about the confiscation on January 12, 2021. (*Id.*, at PageID.428.) As

Defendant argues, "[i]t is illogical and impossible that conduct from [Plaintiff] on

January 12, 2021 caused CO Isrow to act against [Plaintiff] on January 9, 2021."

(ECF No. 65, PageID.400.)  Because Plaintiff has failed to identify any protected

conduct occurring *before* the alleged retaliation, his claim fails as a matter of law.

Moreover, it bears noting that even *if* Plaintiff had alleged a precipitating event, he also testified that he did not know why Defendant Izro took his television.  (ECF No. 65-2, PageID.429.)  Accordingly, there is no question of fact to present to a jury on this claim.

Likewise, Plaintiff testified that on August 15, 2021, he again was sent to the hole.  (ECF No. 65-2, PageID.440.)  He claims that before he left for the hole, he told Defendants Harvey and Slater that he "had a working TV." (*Id.*at PageID.440.)  He further states that when he got back from the hole, his TV was broken and he knows that Defendant Slater intentionally broke his TV.  (*Id.*at PageID.440-41.)  He testified Defendant Harvey "didn't break my TV" yet is also at fault because Harvey knew what Slater did.  (*Id.*at PageID.440-441.)  Plaintiff claims that Slater told him beforehand that he was going to break his TV, but clarified his basis for believing that Slater *in fact* broke his TV is because before Plaintiff went to the hole, Slater told Plaintiff that his TV "was going to come up missing" and, when Plaintiff returned, it was broken.  (*Id.*at PageID.440-42.) Plaintiff testified that Slater broke his TV because Plaintiff kept "getting into it with inmates, stabbing inmates, robbing inmates," and Slater was mad that Plaintiff's behavior would "fall back" on Slater as the Sergeant in charge.  (*Id.*at PageID.442.)  Plaintiff also testified that he and Slater just "don't like each other." (*Id.*)

The Supreme Court has held that "a physical assault is not by any stretch of the imagination expressive conduct protected by the First Amendment." *Wisconsin v. Mitchell*, 508 U.S. 476, 484 (1993) (citing *Roberts v. United States Jaycees*, 468 U.S. 609, 628 (1984) ("[V]iolence or other types of potentially expressive activities that produce special harms distinct from their communicative impact ... are entitled to no constitutional protection"); *NAACP v. Claiborne Hardware Co.*, 458 U.S. 886, 916 (1982) ("The First Amendment does not protect violence")). Thus, Plaintiff's testimony that Defendant Slater broke his TV because of his misbehavior cannot as a matter of law constitute an activity protected by the Constitution.  Further, even if he had identified protected behavior, his claim would nonetheless fail because he offers no evidence on which a reasonable jury could find causation.  Plaintiff's testimony that he and Slater just "don't like each other" or that Slater told him that his TV was going to "come up missing" is insufficient to create a jury question that Slater intentionally broke his TV.[12]  *See Hartsel v. Keys,* 87 F.3d 795, 802 (6th Cir. 1996) ("[S]peculation and hunches,"

---

[12] The testimony was as follows:
A: He said he was going to do it and that's what he did.
Q: Can you tell me what specifically he said, like what were the words out of his mouth?
A: He just said, today I'm -- he didn't exactly say he was going to break my TV. But he said my TV was going to come up missing, and that's what happened. ****
But instead of it come up missing, it came up broke.

cannot create a genuine issue of material fact sufficient to prevent summary judgment.).

Because Plaintiff has failed to identify any issues of fact to create a jury question that he engaged in protected conduct or that Defendants retaliated against him based on that conduct, and because the record establishes Defendants are entitled to judgment as a matter of law, the Court should **GRANT** Defendants' motion on Plaintiff's retaliation claim.

## III.   ORDER

### A.   Plaintiff's Motion to Strike (ECF No. 70)

After Defendants submitted their reply brief in further support of their motion for summary judgment, Plaintiff filed a motion to strike Defendants' motion for summary judgment or, in the alternative, to allow him to file an amended response to Defendants' motion.

First, Plaintiff argues that Defendants' motion for summary judgment is "deficient" and should be stricken, vaguely claiming that the Defendants "failed to comply with the Federal Rules to even attempt to carry their burden." (ECF No. 70, PageID.615.)  Plaintiff provides no valid reason for his request to strike Defendants' motion – except, perhaps, for the fact that he disagrees with it – and I will deny it as unfounded.  Defendants' motion complies with the Federal Rules, the local rules, and this Court's practice guidelines. It provides proper evidentiary

support for its factual assertions under Rule 56 by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A). Plaintiff cites seven pages of case law and Federal Rules of Civil Procedure, but nothing that applies to Defendants' summary judgment motion and nothing that persuades the Court that Defendants' well-reasoned and well-supported motion should be stricken.

Second, Plaintiff alternatively argues that he should be given a chance to file an amended response brief, admitting that he "did not include a detailed statement of counter facts, or declaration in support[,]" citing his inexperience and *pro se* status as a basis for his request. (ECF No. 70, PageID.614.) The Court disagrees. Plaintiff's current request is consistent with his many requests to amend the pleadings, seek extensions, and "clarify" his own motions. (*See*, e.g., ECF Nos. 19, 23, 27, 33, 37, 44, 50, 54, 60.) Plaintiff has established a pattern of constantly seeking to "tweak" his arguments either in response to Defendants' arguments or because he was unsatisfied with his initial pleading. As the Court has previously told Plaintiff, "deadlines are certainly not mere suggestions." (ECF No. 61.) Plaintiff appears to want to re-do his response primarily because he admittedly did not comply with the Court's scheduling order requirements

regarding the Statement of Facts.  However, Plaintiff was expressly cautioned in this Court's scheduling order: "All parties, regardless of whether they are represented by counsel, are expected to abide by the rules and guidelines identified above." (ECF No. 22, PageID.104 (emphasis in original).)  Plaintiff's failure to abide by this requirement is not grounds to reopen the briefing and further delay this case.  Moreover, although the Court treated Defendants' facts as undisputed, in analyzing Defendants' summary judgment motion, the Court also considered *all* of the record evidence, including Plaintiff's deposition and the materials submitted by Plaintiff within his response brief.  Even if the Court did not treat Defendants' facts as undisputed because of Plaintiff's failure to respond to them in accordance with the Court's scheduling order, they would nonetheless be undisputed, for the reasons stated above, because of the preclusive effect of the Hearing Officer's factual findings and because of the failure of Plaintiff to submit sufficient evidence to create a jury question.  In other words, not only did Plaintiff not *procedurally* comply with this Court's scheduling order, he also did not *substantively* meet his burden under Rule 56.  As such, the Court will deny as fruitless his alternative request to amend his response.[13]

---

[13] To the extent Plaintiff makes a half-hearted request for additional discovery under Rule 56(d), the Court denies that request as he fails to support the request with the requisite affidavit.  Fed. R. Civ. P. 56(d).  Further, the discovery period is now closed, and Plaintiff provides no reason why it should be reopened.

## IV.   CONCLUSION

For the reasons stated above, Plaintiff's motion to strike (ECF No. 70) is

**DENIED** and the Court should **GRANT** Defendants' motion for summary

judgment (ECF No. 65) and award judgment to Defendants on all claims.

Defendants' duplicative reply brief (ECF No. 68) is hereby **STRICKEN**.

## V.   PROCEDURE ON OBJECTIONS

### A.  Report and Recommendation

The parties to this action may object to and seek review of this Report and

Recommendation, but are required to file any objections within 14 days of service,

as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule

72.1(d).  Failure to file specific objections constitutes a waiver of any further right

of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health &*

*Human Servs.*, 932 F.2d 505 (6th Cir. 1991).  Filing objections that raise some

issues but fail to raise others with specificity will not preserve all the objections a

party might have to this Report and Recommendation.  *Willis v. Sec'y of Health &*

*Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of*

*Teachers, Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to Local Rule

72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," and "Objection No.

2," *etc*.  Any objection must recite precisely the provision of this Report and

Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity.  Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d).  The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," *etc*.  If the Court determines that any objections are without merit, it may rule without awaiting the response.

### B.  Order on Motion to Strike

The attention of the parties is drawn to Fed. R. Civ. P. 72(a), which provides a period of fourteen (14) days after being served with a copy of this order within which to file objections for consideration by the district judge under 28 U.S.C. § 636(b)(1).

**IT IS SO ORDERED.**

Dated:  July 11, 2024                     s/*Anthony P. Patti*
                                          Anthony P. Patti
                                          UNITED STATES MAGISTRATE JUDGE